## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1)   STACY WILLIS, as Personal Representative of the Estate of MITCHELL EVERETT WILLIS, deceased,<br><br>        Plaintiffs<br><br>v.<br><br>1)   OKLAHOMA COUNTY DETENTION CENTER;<br>2)   BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY, OKLAHOMA;<br>3)   P. D. TAYLOR, OKLAHOMA COUNTY SHERIFF, individually and in his official capacity;<br>4)   OKLAHOMA COUNTY SHERIFF'S DEPARTMENT;<br>5)   JOHN WHETSEL individually;<br>6)   DEFENDANTS JOHN AND JANE DOES I THROUGH X OF THE OKLAHOMA COUNTY SHERIFF'S DEPARTMENT, individually and in their official capacities;<br>7)   ARMOR CORRECTIONAL HEALTH SERVICES, INC., a Florida Corporation;<br><br>        Defendants | Case No.   CIV-18-323 -D |

## **COMPLAINT**

COMES NOW the Plaintiff, Stacy Willis, as the Personal Representative of the Estate

of Mitchell Everett Willis, deceased, on behalf of Mitchell Everett Willis and all the

beneficiaries named  in Oklahoma's wrongful death statute, and for their causes of actions

against these Defendants, alleges and states as follows:

## PARTIES

1.      Plaintiff Stacy Willis is the Personal Representative of the Estate of Mitchell Everett Willis, deceased, case number PR-2017-945, District Court of Oklahoma County. That Stacy Willis resides in the State of Oklahoma and this case concerns the death of her brother, Mitchell Everett Willis, who was killed on August 18, 2017 while in  the custody of the Oklahoma County Detention Center.

2.      Separate Defendant Board of County Commissioners of Oklahoma County, Oklahoma, is a subdivision of the State of Oklahoma operating the Oklahoma County Detention Center (OCDC), and is responsible for the jailing, safe keeping and supervision of Oklahoma County detainees awaiting trial and for allocating sufficient money to safely operate the OCDC. The Oklahoma County Detention Center has the statutory and constitutional responsibility of insuring the safety and well-being of all detainees in its care and custody. Mitchell Everett Willis was a pre-trial detainee in OCDC when he was killed at the hands of OCDC staff and employees.

3.      Separate Defendant P. D. Taylor was at all relevant times alleged herein, the duly elected and/or appointed Sheriff of Oklahoma County, Oklahoma. In that capacity, and pursuant to Oklahoma statutes, he was responsible for the

2

operation of the OCDC, including establishing and enforcing, or failing to establish and enforce, the policies, practices, procedures and regulations for the sheriff's department at the OCDC. Defendant Taylor was, at all relevant times, responsible for the hiring, training, supervision, discipline and control of all members of the sheriff's department and the OCDC.

4.    Defendant Taylor had the constitutional and statutory responsibility for the conditions  and practices of the OCDC; he was therefore responsible for insuring the OCDC conformed to the state and federal constitutions. Defendant Taylor, as the custodian and policy-maker of the OCDC, was also responsible for the internal patterns and action, or inaction, by all employees of the sheriff's department that resulted in the creation, or tacit approval, of "ad hoc" policies that violated constitutional rights of pre-trial detainees like Mitchell Everett Willis who were housed in the OCDC. Defendant Taylor is further responsible for, and charged with, furnishing and paying  for all medical aid for all OCDC detainees. He is also responsible for the action, or inaction, which results in the policy or "ad hoc" policy of failing to reasonably protect OCDC inmates and detainees from excessive force by staff members and/or employees. In sum, Defendant Taylor was constitutionally and statutorily responsible for the operation, practices and totality of conditions of the OCDC. Defendant Taylor acted as the chief policy-maker, agent, servant and employee

3

of Oklahoma County, Oklahoma at all relevant times alleged. Defendant Taylor is sued in his individual and official capacity because he did not properly carry out his responsibilities.

5.   Separate Defendant Oklahoma County Sheriff's Department (Sheriff's Department) is responsible for staffing, monitoring and operating the OCDC. The Sheriff's Department has the statutory and constitutional responsibility of implementing and following polices, procedures and guidelines for the jailing and safe-keeping of OCDC detainees. The policies, procedures and guidelines must conform to Oklahoma law, minimum jail standards and the laws and constitutions of the United States and Oklahoma. Furthermore, the policies, procedures and guidelines must be clear and effective to insure the safe-keeping of all OCDC detainees. P. D. Taylor assumed the duties of the sheriff of Oklahoma County, Oklahoma on March 1, 2017 and is sued in his official capacity as the Sheriff of Oklahoma County, Oklahoma.

6.   Separate Defendant John Whetsel was at relevant times herein the duly elected sheriff of Oklahoma County, Oklahoma until he retired on March 1, 2017. In that capacity, he was responsible for the same duties identified in paragraphs 3 and 4 for Sheriff P. D. Taylor. Relevant employees were hired, trained and supervised and/or disciplined under Defendant Whetsel and therefore the constitutional violations and practices alternatively could have begun under his

4

supervision and control of the OCDC. In sum, Defendant Whetsel was constitutionally and statutorily responsible for the operation, practices and totality of conditions of the OCDC that began prior to Sheriff Taylor's assumption of duties and therefore the unconstitutional acts and policies and procedures are related to his acts and/or inaction as well. Because Sheriff Whetsel is no longer the sheriff of Oklahoma County, he is sued in his individual capacity.

7.     Separate Defendants John and Jane Does I through X of the Oklahoma County Sheriff's Department are either individuals involved in the excessive force used against Mitchell Everett Willis and/or are supervising officers of the employees at the OCDC at all relevant times herein. John and Jane Doe Defendants are responsible for implementing and following procedures and guidelines for the arrest, jailing, medical care and safe-keeping of OCDC detainees. These employees are responsible for post assignments, supervision of Mitchell Everett Willis and/or appropriately interacting with Mitchell Everett Willis in accordance with constitutional standards and Oklahoma laws. These Defendants are being sued in their individual and official capacities.

8.     Separate Defendant Armor Correctional Health Services, Inc. (Armor), whose principal place of business is in the State of Florida, was contracted by the Oklahoma County Board of Commissioners and/or Oklahoma County Sheriff's

Department to provide medical care to its inmates. As such, Armor Correctional Health Services is liable for the acts of negligence and/or deliberate indifference of its employees during its care of Mitchell Everett Willis under *respondeat superior* and upon those acts that are related to the policies, procedures and protocols implemented by the entity.

## JURISDICTION AND VENUE

9.      This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and other applicable statutory common law theories of recovery. This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, because the action presents federal questions and involves a deprivation of civil rights arising under the federal constitution. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

10.     Venue is proper in this Court under 28 U.S.C. § 1392(B), because the acts complained of occurred in Oklahoma County, Oklahoma, which is located in the Western District of Oklahoma.

## FACTS

11.     On August 18, 2017, Mitchell Everett Willis was brought to the Oklahoma County Detention Center on various charges including, but not limited to

public drunkenness and disorderly conduct and therefore was being held as a pre-trial detainee within the custody and control of the Oklahoma County Detention Center.

12.    According to the medical examiner's report, Mr. Willis was ultimately assaulted at some point after intake. Upon information and belief this assault was at the hands of Oklahoma County Detention Center employees and/or John and Jane Doe Defendants.

13.    As a result of this assault, Mitchell Everett Willis suffered blunt force injuries to his head, neck and torso including multiple thoracic vertibrae fractures and a severed spinal cord.

14.    After suffering these life-threatening injuries, and being rendered paralyzed, Mr. Willis was left face down on the floor in his cell, naked.

15.    Despite being in this obvious serious medical condition, Mr. Willis was left to remain there were he eventually died as a result of the injuries.

16.    Plaintiff alternatively believes that the OCDC staff informed the employees of Defendant Armor Correctional Health Services, who failed to provide Mr. Willis any medical care and/or attention despite his serious medical needs and/or failed to call emergency services to attend to his serious medical needs.

17.    The blunt force injuries were the result of a John and/or Jane Doe employee applying severe pressure to Mr. Willis' back and violently pulling up on his

neck in an attempt to disrobe Mr. Willis against his wishes. This severe and excessive force ultimately caused the death of Mr. Willis.

18.   It is believed that the OCDC employees and or the Armor employees observed Mr. Willis in this serious medical need and exhibited a deliberate indifference in failing to respond in accordance with the constitutional requirements of the United States.

19.   Mr. Willis was ultimately found unresponsive as a result of these injuries and was declared dead as a result of homicide.

20.   Statements from Sheriff Taylor include information that the Detention Center employed individuals and/or teams of individuals who were provided no supervision and trained themselves on the force and techniques used against Mr. Willis which ultimately caused his death. These excessive force techniques and self-training practices were the custom and practice of the facility at the time of Mr. Willis' detention.

21.   These unconstitutional practices began either under P. D. Taylor's term as sheriff or they began under Sheriff Whetsel's term as sheriff and continued during and up to Mr. Willis' detention.

22.   Sheriff Taylor and Sheriff Whetsel knew that the OCDC was understaffed and under supervised and requested multiple funding increases which were rejected by the Oklahoma County Board of Commissioners. This lack of

funding causes or contributes to unconstitutional practices as the resources are not sufficent to adequately train, supervise and/or operate the jail in accordance with constitutional guidelines.

23. Most recently, Sheriff Taylor sought an additional $803,377.00 in funding in May 2017, which was denied by the Board of County Commissioners.

24. The Oklahoma County Sheriff's Department and the Oklahoma County Board of Commissioners have been aware of substandard policies, procedures and/or actions at the OCDC as early as July 2008 when the Department of Justice issued serious concerns. Furthermore, the Department of Justice has placed the OCDC under its watch since 2009 and recently the sheriff's department refused to allow the Department of Justice to inspect the jail.

25. In its report, the Department of Justice identified concerns with insufficient staffing, use of force and insufficient remedial training when detention officers improperly used excessive force.

26. In its reports, the Department of Justice also found that the jail staff needed to be trained on medical and mental health policies including, but not limited to, dealing promptly with emergency situations.

27. The substandard policies, procedures and practices of the Oklahoma County Detention Center persisted up until Mr. Willis' death and beyond.

## COUNT I - VIOLATIONS OF 42 U.S.C. § 1983

28.    Plaintiff realleges and incorporates every allegation set forth in paragraphs 1 through 27 as if fully set forth herein.

29.    The Defendants, individually and in concert, had knowledge of, and/or were deliberately indifferent to, the following:

   A.    The ongoing pattern and practice of constitutional violations at the OCDC and the sheriff's office, which had been disclosed by various investigations and inspections before Mitchell Everett Willis was killed;

   B.    The ongoing failure to implement adequate policies, guidelines and procedures to reasonably insure the safety of detainees and the prevention of the use of excessive force on detainees like Mitchell Everett Willis;

   C.    Failure to follow the written OCDC policies, guidelines and procedures when Mitchell Everett Willis was a detainee;

   D.    Failure to properly staff the OCDC;

   E.    Failure to properly assign duties of the deputies in charge of the care, custody and control of detainees;

   F.    Failure to properly monitor the supervisors of the OCDC;

   G.    Failure to correct known deficiencies in the OCDC's operation, policies

10

and procedures.

30.   All the Defendants' acts and omissions created a known and substantial risk of serious and deadly harm to Mitchell Everett Willis and others like him. Under all circumstances, the Defendants' pattern of action and inaction toward Mitchell Everett Willis, their lack of properly trained staff, and their failure to supervise, constitute a deliberate indifference to the known substantial risk of serious harm and death to Mitchell Everett Willis.

31.   These acts and omissions violated his constitutionally protected rights and proximately caused all of his injuries and death. All of the Defendants' acts and omissions constitute a deliberate indifference to Mitchell Everett Willis' care, custody and safe-keeping. These acts and omissions proximately caused Mitchell Everett Willis' death and violated his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, which are actionable under 42 U.S.C. § 1983.

## EXCESSIVE FORCE

32.   Plaintiff hereby realleges and incorporates by reference the allegations complained in paragraphs 1 through 31 of this Complaint.

33.   While detained in Defedants' custody, Mitchell Everett Willis had a constitutional right under the Fourth Amendment to be free from the use of excessive force. The Defendants violated Mr. Willis' right under the Fourth

Amendment to be free from excessive force by their above described actions consisting of their intentional acts to injure and cause extreme pain and suffering to Mr. Willis.

34.     His constitutional right was clearly established at the time of Mr. Willis' detention.

35.     As a direct and proximate result of Defendants' acts and/or omissions, as described herein, the Defendants, while acting under color of state law, deprived Mr. Willis of his constitutional right in violation of the Fourth Amendment and 42 U.S.C. § 1983.

36.     As a direct and proximate result of Defendants' acts and/or omissions, Mr. Willis suffered injuries and ultimately lost his life in violation of the rights, privileges and immunities under the Constitution of the United States, resulting in damage in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

37.     The Defendants, and each of them, have in regard to this matter exhibited a willful and deliberate disregard for the rights and safety of Mr Willis. Accordingly, Plaintiff is entitled to punitive damages against all of the individual and supervisory Defendants in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

## DENIAL OF DUE PROCESS RIGHT TO ADEQUATE MEDICAL CARE

38.  Plaintiff hereby realleges and incorporates by reference the allegations complained in paragraphs 1 through 37 of this Complaint.

39.  While detained in Defendants' custody, Mr. Willis had a constitutional right under the substantive due process clause of the Eighth Amendment to the Constitution of the United States to have his basic needs met, including the right to receive adequate medical care. Deliberate indifference to an inmate's serious medical needs constitutes a violation of Mr. Willis' due process rights, which are further secured by the Fourteenth Amendment. Mr. Willis paralysis is a serious medical condition that was clearly established at the time of his detention and suffering of the injuries.

40.  During all times herein, the individual Defendants acted under the color and pretense of law.

41.  Armor Correctional Health Services, Inc., the individual Defendants and the John and Jane Doe Defendants herein deprived the Plaintiff of the rights, privileges and immunity secured to them under the United States Constitution and the laws of the United States.

42.  The Defendants' behavior far surpassed mere negligence as they willfully denied Mr. Willis adequate medical care and were deliberately indifferent to his serious medical need.

43.    Mr. Willis had objective and serious medical needs and it was obvious that he required immediate medical attention after the use of excessive force. Furthermore, Defendants knew of and disregarded a substantial risk of serious harm to his health and safety and were so grossly incompetent and inadequate as to shock the conscience.

44.    As a direct and proximate result of Defendant' acts and/or omissions, Mr. Willis was deprived of his federal constitutional right to receive adequate medical care in violation of the United States Constitution and as a further direct and proximate result of Defendants' acts and/or omissions suffered excruciating pain and suffering and wrongful death which resulted in damages in excess of Seventy-five Thousand Dollars ($75,000.00).

45.    The Defendants, and each of them, have in regard to this matter exhibited a willful and deliberate disregard for the rights and safety of Mr. Willis. Accordingly, Plaintiff is entitled punitive damages against all of the individual and supervisory Defendants in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

## NEGLIGENCE

46.    Plaintiff hereby realleges and incorporates by reference the allegations complained in paragraphs 1 through 45 of this Complaint.

47.    Upon information and belief, the Oklahoma County Board of Commissioners

and/or the Oklahoma County Sheriff's Office contracts with Armor Correctional Health Services, Inc. to provide care to detainees at the OCDC. Armor Correctional Health Services, Inc. and its employees are not protected under the qualified immunity and are subject to the state law claims of the State of Oklahoma.

48.    The above described acts and/or omissions by Armor Correctional Health Services, Inc. employees constitute at bare minimum negligence which caused and/or contributed to Mr. Willis' death and damages.

49.    As a direct and proximate cause of the Armor Correctional Health Services, Inc. employees' acts and/or omissions, as described within this section, Mr. Willis suffered excruciating pain and ultimately lost his life which resulted in damages in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

50.    These Defendants, and their acts described herein, have exhibited a willful and deliberate disregard of the rights and safety of Mr. Willis. Accordingly, Plaintiff is entitled to punitive damages against these individuals in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

51.    Plaintiff has additionally requested records from these Defendants under the Oklahoma Open Records Act and the Freedom of Information Act. These requests were made in October and November of 2017 and have not been

fulfilled and/or objected to with proper objections. Plaintiff is additionally requesting this Court to order these records to be produced in accordance with those statutes.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, jointly and severally as follows:

A.   Finding that Defendants, and each of them, committed acts and omissions that constitute violations of the United States Constitution actionable under 42 U.S.C. § 1983;

B.   Awarding judgment in favor of Plaintiff against the Defendants, and each of them, jointly and severally in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) as and for compensatory damages;

C.   Awarding judgment in favor of Plaintiff against the Defendants, and each of them, jointly and severally in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) as and for punitive damages;

D.   Awarding judgment in favor of Plaintiff against the Defendants who are independent contractors for their negligent acts jointly and severally in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) as and for compensatory damages;

E.   Awarding Plaintiff all applicable pre-judgment and post-judgment interest;

16

    F.       Awarding Plaintiff attorney fees and costs pursuant to 42 U.S.C. § 1983

and 1988.

                    Respectfully submitted,
                    WALSH & WALSH, P.L.L.C.

                     s/ Derek S. Franseen
                    Micky Walsh, OBSA No. 9327
                    Derek S. Franseen, OBA No. 30557
                    2000 E. 15th Street., Suite 150G
                    Edmond, OK 73013
                    (405) 843-7600 - Telephone
                    (405) 606-7050 - Facsimile
                    mwalsh@walshlawok.com
                    dfranseen@walshlawok.com

                    and

                    Monty Cain, OBA No.  15891
                    Cain Law Office
                    P.O. Box 892098
                    Oklahoma City, OK 73189
                    405-759-7400 - Telephone
                    405-759-7424 - Facsimile
                    monty@cainlaw-okc.com

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

17