## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STACY WILLIS, as Personal       )
Representative of the Estate of,  )
MITCHELL EVERETT WILLIS,        )
Deceased,                        )
      Plaintiff,         )
                                )
vs.                              )    Case No. 18-CV-00323-D
                                )
OKLAHOMA COUNTY                 )
DETNENTION CENTER *et al.*,      )
      Defendants.       )

## ORDER

Before the Court is a Joint Motion to Dismiss and Brief in Support [Doc. No. 36] filed by Defendants Sheriff P.D. Taylor and Sheriff John Whetsel ("Defendants") in their individual capacities. The Sheriffs' Joint Motion was filed pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff filed a response [Doc. No. 44], to which Defendants have replied. [Doc. No. 49].

## BACKGROUND

Mitchell Everett Willis ("Willis") was arrested on August 18, 2017. Plaintiff's Amended Complaint [Doc. No. 30] at 7, ¶ 10. That same day, Willis was placed in the custody of the Oklahoma County Detention Center (the "OCDC") as a pretrial detainee. *Id.* at 7–8, ¶¶ 10,12. After intake, Willis was allegedly assaulted by employees of the Oklahoma County Sheriff's Department (the "OCSD"), suffering blunt force trauma to the head, neck, and torso. *Id.* at 7, ¶ 10. Several other OCSD employees looked on as Willis

was attacked.  *Id.*  Following the assault, Willis was left face down on the floor of his cell for several hours, where he died as the result of his injuries.  *Id.* at 9–10, ¶¶ 16,19.

Before Willis' death, OCDC had been the subject of serious concern.  Because of a 2007 investigation into OCDC, the United States Department of Justice ("DoJ") issued a report ("DoJ Report").  Doc. No. 30, Ex.1 at 1.  Certain conditions at OCDC, the DoJ concluded, "violate the constitutional rights of detainees confined therein."  *Id.* at 2.  The DoJ noted insufficient staffing, possible uses of excessive force, issues regarding medical care, and poor training.  *Id.* at 6–10.

OCSD oversees the jail's day-to-day operations.  *See* Memorandum of Understanding Between the United States and Oklahoma County, Oklahoma, Doc. No. 30, Ex. 2 at 6.  The questionable practices employed at OCDC allegedly began under Sheriff Whetsel and continued through Sheriff Taylor's term in office.  *Cf. id.* at 11, ¶ 23; *see* Plaintiff's Response in Opposition to the Joint Motion to Dismiss [Doc. No. 44] at 5–6 & n.7.  About five months before Willis' death, Defendant Sheriff Whetsel retired from his position as sheriff.  That same day, March 1, 2017, Defendant Sheriff Taylor took office.  *See* Plaintiff's Amended Complaint [Doc. No. 30] at 4–5, ¶ 6.

Plaintiff Stacy Willis, on Willis' behalf, sued multiple defendants alleging violations of Willis' rights under the United States Constitution.  *See id.*  The claims were brought pursuant to 42 U.S.C. § 1983, along with requests for attorney's fees under 42 U.S.C. § 1988.

**STANDARD OF DECISION**

*Rule 12(b)(6) Failure to State a Claim*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim has facial plausibility when the court can draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In § 1983 cases, it is particularly important "that the complaint make clear exactly *who* is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *See Robbins*, 519 F.3d at 1249–50 (emphasis in original); *see also Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009).

*Supervisory Liability Under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 provides that a person acting "under the color of law" to deprive someone else of their "rights, privileges, or immunities secured by the Constitution and laws," shall be liable to the person injured. A supervisor cannot be vicariously liable for the conduct of subordinates under § 1983; "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Supervisory liability, however, "allows a plaintiff to impose liability on a defendant-supervisor who creates, promulgates, [or] implements . . . a policy," which results in the deprivation of a person's constitutional rights. *See Dodds v. Richardson*, 614 F.3d 1185,

1199 (10th Cir. 2011), *cert. denied*, 131 S.Ct. 2150 (2011). To succeed in a § 1983 suit against a defendant-supervisor, a plaintiff must show that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199. *See also Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015); *Pahls v. Thomas*, 718 F.3d 1210, 1210, 1225 (10th Cir. 2013).

## DISCUSSION

### I.   Plaintiff's claims for excessive force and lack of adequate medical care are Fourteenth Amendment due process claims.

Because the precise constitutional harm asserted in a § 1983 supervisory liability action goes on to affect the legal standards that apply, the Court must first establish which violation is at issue. *See Estate of Booker v. Gomez*, 745 F.3d 405, 418–19 (10th Cir. 2014) ("[A] district court evaluating an excessive force claim must first isolate the precise constitutional violation with which [the defendant] is charged because [t]he choice of amendment matters.").

### a) *Excessive Force*

"Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment . . . and each carries with it a very different legal test." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). An excessive force claim brought under the Fourth Amendment depends on the objective reasonableness of the defendants' actions. *See id.* The same claim brought under the Fourteenth Amendment turns on other factors,

including "the motives of the state actor." *See id.* at 1325–26; *see also Gomez*, 745 F.3d at 418–19. The Fourth Amendment standard applies to claims "arising from [the] treatment of an arrestee detained without a warrant and prior to any probable cause hearing." *Gomez*, F.3d at 419, 421. The Fourteenth Amendment substantive due process standard governs claims of excessive force brought by a pretrial detainee. *Id.* at 419.

There is nothing in the Amended Complaint suggesting Willis was arrested without a warrant or probable cause. Plaintiff makes repeated references to the violation of Willis' Fourth Amendment rights. Doc. No. 30 at 16, ¶ 38. *See* Plaintiff's Response at 10 & n.10. The Fourth Amendment, by its very text, however, prohibits only "unreasonable seizures." U.S. CONST. amend. IV. Plaintiff also alleges violations under the Fourteenth Amendment. Amended Complaint at 16, ¶ 38. Willis was a pretrial detainee at the time of the attack. *Id.* at 7, ¶ 10. Therefore, Defendants correctly point out that the Fourteenth Amendment substantive due process standard should govern. Sheriffs' Joint Motion at 4.

The Court agrees that Plaintiff's excessive force claim alleges a violation of Willis' Fourteenth Amendment substantive due process rights, resulting from "substandard policies and procedures" on use of force and insufficient training. Amended Complaint at 12, ¶ 27.

### b) Inadequate Medical Care

The Fourteenth Amendment's Due Process Clause likewise entitles pretrial detainees to "protection against denial of medical attention." *Martinez v. Beggs*, 563 F.3d 1082, 1099 (10th Cir. 2009).

5

It is undisputed that a Fourteenth Amendment standard governs here. Amended Complaint at 17 n.13. The Court will therefore analyze both claims under a Fourteenth Amendment substantive due process standard.

## II.     Plaintiff alleges sufficient facts to plausibly show that Willis' Fourteenth Amendment constitutional rights were violated by Defendants' subordinates.

To impose supervisory liability on Defendants, Plaintiff must show that one or more of Defendants' subordinates violated Willis' constitutional rights. *City of L.A. v. Heller,* 475 U.S. 796, 799 (1986); *accord Dodds*, 614 F.3d at 1194–95 (10th Cir. 2010) ("To impose § 1983 liability the plaintiff first had to establish the supervisor's subordinates violated the [C]onstitution.").

The Fourteenth Amendment's Due Process Clause affords a pretrial detainee protection against deliberate indifference to a substantial risk of serious harm. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Burke v. Regalado*, No. 18-5042, 2019 WL 3938633, at *14 (10th Cir. Aug. 20, 2019); *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 2018). In evaluating such Fourteenth Amendment claims, "we apply an analysis identical to that applied in Eighth Amendment cases." *Lopez*, 172 F.3d at 759 n.2.9; *Burke*, 18-5042, 2019 WL 3938633, at *14. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1978). The "[d]eliberate indifference [standard] has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

6

a) *The facts plausibly allege objective deliberate indifference by subordinates.*

The objective component of deliberate indifference is met if the "harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). "[D]eath, [is], without doubt, sufficiently serious to meet the objective component." *Martinez*, 563 F.3d at 1088.

Plaintiff alleges that Willis died because of an assault by OCSD employees and a subsequent lack of medical attention. Amended Complaint at 9–11. With these allegations taken as true, there is enough to plausibly establish objective deliberate indifference by OCSD employees, Defendants' subordinates.

b) *The facts plausibly allege subjective deliberate indifference by subordinates.*

To satisfy the subjective component of a deliberate indifference claim, Plaintiff must show the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

### i. Excessive Force

The Amended Complaint states that OCSD employees physically assaulted Willis. Doc. No. 30 at 8, ¶ 6. Blunt force injuries caused by an alleged knee strike maneuver, rendered Willis paralyzed. *Id.* at 9, ¶¶ 17,18. Plaintiff alleges these injuries ultimately killed Willis. *Id.* Taken as true, these allegations plausibly establish that Defendants' subordinates disregarded an immediate risk to Willis' safety. At least, these facts plausibly establish a risk that should have been obvious, which suffices. *See Farmer*, 511 U.S. at 842.

Plaintiff alleges sufficient facts to plausibly claim that Willis' Fourteenth Amendment rights were violated by Defendants' subordinates' use of excessive force.

### ii. Inadequate Medical Care

Where jail staff disregarded complaints of an inmate's paralysis without performing an exam or offering treatment, the Tenth Circuit found the subjective component of a deliberate indifference inquiry met. *Burke*, 18-5042, 2019 WL 3938633, at *16 (citing favorably to *Benavides v. Cty. of Wilson*, 955 F.2d 968 (5th Cir. 1992)).

Plaintiff alleges that Willis was "left face down on the floor of his cell, naked." Amended Complaint at 9, ¶18. Willis is alleged to have not moved for several hours due to paralysis. *Id*. at 10, ¶ 21. And it is also alleged that OCSD employees made no effort to address Willis' obvious medical needs. *Id*. Taken as true and viewed in favor of Plaintiff, these facts parallel *Burke* and *Benavides*, where the subjective component of deliberate indifference was satisfied given that jail staff ignored the medical needs of a paralyzed

inmate.  *See Burke*, 18-5042, 2019 WL 3938633, at *16 (citing *Benavides*, 955 F.2d at 968.)

Therefore, on both counts, Plaintiff alleges sufficient facts to plausibly show that Willis' Fourteenth Amendment constitutional rights were violated by Defendants' subordinates.  But Plaintiff must do more, as Defendants here are not alleged to have been personally involved in these violations.  Plaintiff, instead, seeks to hold Defendants liable as supervisors.

### III.   Plaintiff has plausibly established that Defendants were responsible for the continued operation of OCDC policies.

To make out a § 1983 claim under a theory of supervisory liability, a plaintiff must plead sufficient facts to show that the defendant "possessed supervisory responsibility" over the policies at issue.  *See Pahls*, 718 F.3d at 1228.  The plaintiff must establish an "affirmative link between the supervisor and the constitutional violation." *Burke,* 18-5042, 2019 WL 3938633, at *19 (10th Cir. Aug. 20, 2019) (citing *Gomez*, 745 F.3d at 435).

For the purpose of a § 1983 claim, the sheriff is legally responsible for the proper management of the jail in his county.  *See Dodds*, 614 F.3d 1203; *see also Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir.1988) (citing Okla. Stat. tit. 19, §§ 513, 547(A)).

Plaintiff asserts that Defendants, as sheriffs, were charged with the statutory and constitutional responsibility of acting as policy makers for OCDC.  Amended Complaint [Doc. No. 30] at 3, ¶ 3–4; Doc. 30, Ex. 2 at 6 ("Defendant Sheriff is responsible for the day-to-day operation of [OCDC] . . . the Sheriff has the custody, rule, and charge of the Jail and Jail Detainees.").  This point is not seriously in dispute.  Tenth Circuit precedent

on the sheriff's legal responsibilities is clear.  *See Dodds*, 614 F.3d 1203; *Meade* 841 F.2d at 1528 ("sheriff is legally responsible for the proper management of the jail in his county"). Defendants, under Oklahoma law, are—or were at some relevant time—charged with formulating, implementing, and overseeing OCDC polices.[1]  *See, e.g.,* 57 Okla. Stat. § 47 ("The sheriff . . . shall have charge of the county jail of his county and of all persons by law confined therein.").

The first prong of the three-part supervisory liability inquiry is met for both the excessive force and inadequate medical care claims.  Defendants "promulgated, created, implemented or possessed responsibility for the continued operation of [the policies at issue.]"  *Cf. Dodds*, 614 F.3d at 1199.

## IV.     Plaintiff failed to plausibly establish that the policies at issue caused Willis' constitutional harm and that Defendants had the requisite state of mind.

It is not enough, however, to simply establish that Defendants were responsible for the operation of the policies at issue.  *Id.* at 1199.

To satisfy the second element of the inquiry under *Dodds*, a plaintiff must show that the supervisor's "alleged action(s) caused the constitutional violation."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013).  *See also Burke*, 18-

---

[1] Although Plaintiff provides no legal authority for this proposition, "in ruling on a Rule 12(b)(6) motion, the Court may properly take judicial notice of state statutes regarding the implementation and administration of particular laws."  *United States v. Coffman*, 638 F.2d 192, 194 (10th Cir. 1980).

5042, 2019 WL 3938633, at *19; *Gomez,* 745 F.3d at 435.  "A plaintiff [must] establish the 'requisite causal connection' by showing the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Dodds*, 614 F.3d at 1195–96.

The Court is mindful that "the Supreme Court has yet to speak with much clarity on the theories of causation that could demonstrate a supervisory official's liability for the constitutional violations carried out by a subordinate." *Dodds*, 614 F.3d at 1208.  And, further, that in this context the Tenth Circuit has not interpreted precisely "what allegations of personal involvement . . . meet *Iqbal's* stricter liability standard." *See Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016); *Schneider,* 171 F.3d at 768.  Given these uncertainties, as well as the overlap between the second and third prongs of the supervisory liability inquiry, it is worth addressing both at once under these facts.

To satisfy the third element of a supervisory liability claim, a plaintiff must show that the supervisor "took the alleged actions with the requisite state of mind." *Schneider,* 171 F.3d at 768.  Under the Fourteenth Amendment a plaintiff can "establish the requisite state of mind by showing that [a supervisor] 'acted with deliberate indifference.'" *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018).  "[D]eliberate indifference is a stringent standard of fault." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  It requires proof that an actor disregarded a known or obvious consequence of his action. *Id.* "[A] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which

11

will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997).

      *a. Excessive Force*

Plaintiff claims the DoJ report is evidence that Defendants knew, or reasonably should have known, of conditions that would cause others to deprive Willis of his constitutional rights. *See* Amended Complaint at 12, ¶ 27; Plaintiff's Response at 7. The DoJ certainly did express concern about the use of force to control inmates housed in crowded conditions and noted an excessive use of physical restraints. *See* Doc. No. 30, Ex.1 at 6–10. The DoJ report, however, made no mention of the use of knee strikes against inmates, nor did the report describe any specific incidents like what Willis experienced. There is no direct connection between the concerns expressed in the DoJ report and the circumstances under which Willis was allegedly subjected to an excessive use of force by OCSD employees. *Cf. Hook v. Regents of Univ. of Cal.,* 394 F. App'x 522, 537 (10th Cir.2010); *O'Carroll v. Okla. Bd. of Cty. Comm'rs*, No. CIV-10-232-D, 2012 WL 1072240, at *9 (W.D. Okla. Mar. 30, 2012) (DeGiusti, J.) (finding no direct correlation between the DoJ report and the circumstances under which Plaintiff was allegedly exposed to excessive force).

The present action is unlike *Christman v. Board of County Commissioners of Oklahoma County,* where the Court reasoned that statements made by Sheriff Taylor in a NewsOK report were sufficient to establish the causal connection necessary to satisfy the second element of a §1983 supervisory liability claim. Case No. CIV-17-1309-D, Doc. No. 39 at 14. In *Christman*, the Complaint alleged specifically that a S.E.R.T. team

physically battered a problem inmate. *Id.* at 3.  Given (1) the frequency with which S.E.R.T

teams encounter problem inmates; (2) Taylor's acknowledgment of the deficient policies;

and, (3) the factual similarities in the case at hand, the Court found that the allegations

sufficed to plausibly claim that Taylor knew or should have known that constitutional harm

would arise. *Id.* at 14.  Here, there is no indication that Willis was a problem inmate, and

there are no facts in the Amended Complaint linking any statements Taylor may have made

to the circumstances surrounding Willis' death.  Even with all available facts viewed in a

light most favorable to Plaintiff, the Court cannot draw inferences like those made in

*Christman,* here.  The facts do not establish a plausible claim that the policies were the

actual cause of the constitutional harm.  And therefore, it cannot be that "the need for more

or different training [was] so obvious, and the inadequacy so likely to result in the violation

of constitutional rights, that the policymakers . . . can reasonably be said to have been

deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

Plaintiff's Amended Complaint and Response next assert that the opinion in *Layton

v. Board of County Commissioners of Oklahoma County,* establishes the required causal

connection and state of mind.  512 Fed. Appx. 861, 872 (10th Cir. 2013).  To the contrary,

*Layton* reinforces the Court's conclusions here.  The allegations in *Layton* tracked closely

with the specific findings made in the DoJ report, and both the report and the opinion were

issued the same year.  *See id.* at 864.  And, in *Layton*, the Tenth Circuit emphasized cases

where previous assaults made the risk of harm obvious, precisely because previous assaults

were factually similar to the conduct at issue. *Id.*  For example, in *Tafoya v. Salazar*, where

an inmate was sexually assaulted by a detention officer, the record contained enough

evidence of previous sexual assaults on female inmates.  516 F.3d 912, 921 (2008).  In fact, the Tenth Circuit noted, three civil suits arising from similar sexual assaults in the jail had already been filed against the sheriff.  *Id.* at 916.

Any reliance on *Tefoya* here would be misplaced.  In that case, the Tenth Circuit found the sheriff should have known of the risk because the risk was obvious.  *See Tafoya*, 516 F.3d at 917 ("[I]f a risk is obvious, so that a reasonable man would realize it, we might well infer that [the prison official] did in fact realize it.") (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).  Plaintiff does not effectively assert that *Layton* put Defendants on notice of circumstances factually similar to those under which Willis suffered a constitutional violation.

Plaintiff also makes general allegations that Defendants "have been aware of substandard policies, procedures and/or actions at the OCDC."  *See* Amended Complaint at 12, ¶ 27.  These allegations, standing alone and without sufficient underlying facts, are too general and conclusory to support a valid claim with respect to the second factor—the causal connection.  *See Hook*, 394 F. App'x 522 at 537; *see also Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013).

### b.  Inadequate Medical Care

Plaintiff alleges that Defendants were aware of deficiencies in their policies "as early as July 2008 when the U.S. Department of Justice issued serious concern."  *See* Amended Complaint at 12, ¶ 27.  The DoJ Report states that OCDC "does not adequately screen detainees for serious medical problems," Doc. No. 30, Ex.1 at 13, and that OCDC "had some problems providing appropriate access to medical care during emergencies."

*Id.* at 14.   Further, Plaintiff claims that *Layton* put Defendants on notice that OCDC suffered from "longstanding, systematic deficiencies in medical care…specifically that detainees were not being seen for medical care in a timely manner." *See id.* at 12 n.6 (quoting *Layton*, 512 F. App'x at 869.).

As was the case for the excessive force claim, these allegations made by Plaintiff are insufficient to plausibly establish that a causal connection existed between Defendants' policies and the constitutional violations at issue.   General allegations are insufficient. *See Peterson*, 707 F.3d at 1206.   The facts described in the DoJ report are unlike the facts alleged by Plaintiff in Willis' case.   Further, the DoJ report was published approximately nine years before the events at issue.  *Cf.  Burke v. Whetsel*, No. CIV-15-468-D, 2016 WL 6875899, at *2 (W.D. Okla. Nov. 21, 2016) (DeGiusti, J) (noting disfavorably that the DoJ Report was issued five years prior to the alleged events); *Metz v. Bd. of Cty. Comm'rs of Okla. Cty., Okla.*, No. CIV-10-1240-D, 2012 WL 527641, at *4 (W.D. Okla. Feb. 16, 2012) (DeGiusti, J) (noting the time lapse between the issuance of the DoJ report and the events at issue); *Turner v. Okla. Bd. of Cty. Comm'rs*, No. CIV-18-36-SLP, 2019 WL 1997473, at *4 (W.D. Okla. May 6, 2019) ("[The DoJ Report is] too remote to support any reasonable inference that those same conditions continued to exist."); *Meadows v. Whetsel*, No. CIV-14-1030-HE, 2015 WL 7016496 at *6 (W.D. Okla. Nov. 10, 2015) (rejecting § 1983 plaintiff's reliance upon the same DoJ report . . . because it was not "recent enough to be relevant").   Unlike this case, the facts in *Layton* mirrored facts stated in the DoJ Report. *Layton* involved an inmate with preexisting conditions whose medicine was not properly administered and who did not receive follow up treatment.  *Layton,* 512 F. App'x at 862.

The Tenth Circuit, in *Layton*, highlights facts in the DoJ Report indicating OCDC had "ongoing problems both with the administration of prescription medications and in providing follow-up care to seriously ill patients." *Id.* at 864.

Given that the DoJ Report was issued about nine years ago, along with the factual differences between this case and *Layton*, Plaintiff has failed to allege sufficient facts to plausibly establish a causal connection between the policies Defendants oversee and Willis' constitutional harm. Plaintiff has also not established a pattern of constitutional violations that would have made a risk of harm so obvious as to allow for an inference of deliberate indifference on Defendants' part.

For both the excessive force and inadequate medical care claims, Plaintiff has failed to plausibly establish that the policies at issue caused Willis' constitutional harm and that Defendants had the requisite state of mind.

## CONCLUSION

For the foregoing reasons, Defendants' Joint Motion to Dismiss and Brief in Support [Doc. No. 36] is **GRANTED**. All claims against Sheriff Taylor and Sheriff Whetsel, in their individual capacity, are **DISMISSED WITH PREJUDICE** to refiling.[2]

---

[2] Plaintiff has already had a chance to amend her Complaint and failed to cure deficiencies. "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *accord Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (leave to amend should be freely granted, but amendment may be denied when it would be futile). Since it appears Plaintiff is unable to assert a constitutional claim against Defendants, the Court finds that further amendment would be futile.

**IT IS SO ORDERED** this 13th day of September 2019.


TIMOTHY D. DeGIUSTI
Chief United States District Judge