IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STACY WILLIS, *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-18-323-D |
| ) | |
| OKLAHOMA COUNTY ) | |
| DETENTION CENTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court is the Joint Motion to Exclude Expert Testimony of Robert Bux [Doc. No. 125] filed by Defendants Jonathan Johnson, James Newkirk, Kody Ward, and Tiffany Williamson. Plaintiff responded in opposition [Doc. No. 167], and Defendants filed a reply [Doc. No. 181]. The matter is fully briefed and at issue.[1]

Plaintiff offers Dr. Bux as an expert witness to testify about Mr. Willis's cause of death. Defendants' objections to Dr. Bux's testimony are based on the content of his expert report and his deposition testimony. Defendants' only contention regarding Dr. Bux's qualifications is their argument he is unqualified to offer an opinion regarding the policies, training, and performance of sight checks in a detention facility. Most of Defendants'

---

[1] Based on the evidence in the record before it, the Court finds a formal hearing is not necessary. A formal hearing is not required to adjudicate a *Daubert* motion, and the Court has considerable latitude in deciding whether to hold a formal hearing. *See United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999); *see also Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 664 (10th Cir. Mar. 29, 2013) (unpublished) (the court properly exercised its discretion in issuing a *Daubert* ruling without a formal hearing due to the number of expert reports, deposition transcripts, and other evidence that accompanied the parties' argument).

motion is committed to their argument that Dr. Bux's opinions are unreliable or unhelpful. They move to exclude Dr. Bux's opinions and testimony.

## DISCUSSION

Courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). A district court also has broad discretion to decide "how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The admissibility of expert testimony is governed by Fed. R. Evid. 702 and the Supreme Court's opinions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 n.1 (10th Cir. 2011) ("If expert testimony is not reliable under *Daubert/Kumho Tire*, it is not admissible under Rule 702.").

Rule 702 imposes upon the trial judge an important "gate-keeping" function regarding the admissibility of expert opinions. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and

>   (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In considering whether an expert opinion is admissible, the Court performs a two-step analysis. First, the Court determines whether the expert is qualified by knowledge, skill, experience, training, or education to render the opinion. If so qualified, the Court must then determine whether the expert's opinion is reliable under the principles set forth in *Daubert* and *Kumho Tire* and relevant, in that it will assist the trier of fact. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006).

The Supreme Court in *Daubert* listed four non-exhaustive factors that a trial court may consider in making its reliability assessment: (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subjected to peer review or publication; (3) whether the technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory has been generally accepted in the relevant scientific community. *Kumho Tire*, 526 U.S. at 149–50; *103 Investors I, L.P.*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593–94). "The *Daubert* factors are 'meant to be helpful, not definitive,' and not all of the factors will be pertinent in every case." *United States v. Baines*, 573 F.3d 979, 992 (10th Cir. 2009). Thus, in non-scientific cases, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. The inquiry is always, and of

necessity, highly fact-specific, and no one factor is outcome determinative.[2] Finally, when the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

### A.   Expert Qualification

In considering the issue of expert qualification, the Court is guided by *Ralston*, which turned entirely on the expert's qualifications. *Ralston*, 275 F.3d at 965. In *Ralston*, the plaintiff asserted that the warnings accompanying an implanted orthopedic nail were inadequate. The Tenth Circuit affirmed the trial court's exclusion of the testimony of the plaintiff's expert, who was a board-certified orthopedic surgeon and an associate professor at the University of Kansas Medical School. *Id.* at 969. The plaintiff's expert admitted that she was not an expert on intramedullary nailing and that she knew little about the subject. *Id.* Moreover, the plaintiff's expert testified she had never drafted a warning for a surgical device. *Id.* The expert's general credentials, although impressive, were insufficient. "[M]erely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." *Id.* at 970. Her reliance "upon general orthopedic

---

[2] The Advisory Committee Notes to FED. R. EVID. 702 identify other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by a jury. These factors include: (1) whether the expert proposes to testify about matters growing naturally and directly out of his research, independent of the litigation, or whether he has developed his opinion expressly for the purpose of testifying; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the expert has adequately accounted for obvious alternative explanations; (4) whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting; and (5) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give. *See* Fed. R. Evid. 702, advisory committee's note to 2000 Amendments.

and surgical principles and concepts" was not sufficient. *Id.* at 969–70. Additionally, her proposed testimony about the adequacy of the warning was not within the "reasonable confines" of her expertise. *Id.* at 970. "[A]s long as an expert stays within the reasonable confines of his subject area," a lack of specialization does not affect the admissibility of the expert opinion, but only its weight. *Id.* (internal citations omitted).

*Ralston* demonstrates that a focused approach to determining an expert's qualifications is appropriate. The question before the trial court is "specific, not general." *Kumho Tire*, 526 U.S. at 156. The trial court must decide "whether this particular expert ha[s] sufficient knowledge to assist the jurors 'in deciding the particular issues in the case.'" *Id.* "[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092–93 (W.D. Okla. 2009) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). Simply put, "[t]he real question is, what is he an expert about?" *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1232 (N.D. Okla. 2007) (quoting *Wheeling Pittsburg Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001)). Under controlling case law, including *Ralston*, the qualifications of a proposed expert must be assessed only after the specific matters he proposes to address have been identified. *Graves*, 675 F. Supp. 2d at 1093; *In re Williams Sec. Litig.*, 496 F. Supp. 2d at 1232. "[T]he expert's qualifications must be both (i) adequate in a general, qualitative sense (i.e., 'knowledge, skill, experience, training or education' as required by Rule 702) and (ii) specific to the matters he proposes to address as an expert." *Id.*

5

In evaluating Dr. Bux's qualifications, the Court essentially must decide whether he has sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case. *Kumho Tire*, 526 U.S. at 156. Upon examination of Dr. Bux's report and deposition testimony, although Defendants do not dispute this point, the Court concludes Dr. Bux is qualified to testify as to Mr. Willis's cause of death. The Court further finds that while Dr. Bux may not be qualified to render opinions regarding the policies, training, and performance of sight checks in a detention facility, he is certainly qualified to offer opinions concerning Mr. Willis's ability to move after the injury to his spine.

Dr. Bux is a board-certified forensic pathologist with nearly 37 years of experience in pathology. Bux Report at pp. 1–2 [Doc. No. 167-1]. He has worked as a coroner and medical examiner. *Id.* at p.2. Dr. Bux also has experience practicing emergency medicine on a part-time basis. *Id.* Dr. Bux's qualifications thus clearly provide a foundation for him to answer specific questions about the cause of Mr. Willis's death. *See Graves*, 675 F. Supp. 2d at 1092–93.

Dr. Bux, however, does not have sufficient specialized knowledge regarding sight check policy, training, or performance to assist the jurors in deciding specific issues regarding the performance of Defendants' sight checks. In his report, Dr. Bux opines:

> [I]f the deputies had been trained adequately in 15 minute suicide sight checks and performed them as ordered, it is likely that [Mr. Willis] would have been discovered to have been injured early on and medical personnel would have been summoned. He would have been transported to the hospital where resuscitation, life support and probable spine surgery been performed and he likely would have survived.

Bux Report at p. 5 [Doc. No. 167-1]. But Dr. Bux has no experience working in a correctional facility, nor has he ever received training regarding detention center sight checks.[3] He is thus not qualified to offer opinion testimony on the policies, training, or performance of sight checks in this matter. Dr. Bux, however, is certainly qualified as a pathologist to render opinions helpful to the jury concerning Mr. Willis's physical ability to move his body after the injury to his spine.

### B. Reliability of Opinions

In conducting its *Daubert* review, the Court must focus on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Despite this focus, an "expert's conclusions are not immune from scrutiny." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The purpose of the *Daubert* analysis "is always 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dodge*, 328 F.3d at 1222–23 (quoting *Kumho Tire*, 526 U.S. at 152).

Dr. Bux's report explains that internal examination of Mr. Willis's chest and abdomen revealed several injuries, including injuries to Mr. Willis's spine.

---

[3] Though Dr. Bux testified he has experience with sight checks in a psychiatric ward, his experience is too dissimilar to correctional facility sight checks to provide a foundation for him to answer specific questions about how correctional facility sight checks should be performed.

> The vertebral column was transected between the 5th and 6th thoracic vertebrae with associated transection of the thoracic spinal cord. The dura overlying the posterior aspect of the spinal cord at this level was the only connection between the two vertebrae. The vertebral bodies of the 5th and 6th thoracic vertebrae had linear fractures.

[Doc. No. 167-1 at p. 4]. Based on these injuries, Dr. Bux states the cause of Mr. Willis's death was blunt force trauma, which likely occurred inside the cell when the handcuffs were removed from Mr. Willis by detention staff. *Id.* Dr. Bux further explained that pressure applied by Johnson's knee caused these injuries; he stated that "when you look at his injuries, I mean, that's the way it had to happen, there's no other explanation that would fit in this case with the timing and everything else." Dr. Bux Dep. 56:9–24 [Doc. No. 167-2].

Defendants argue Dr. Bux's opinion that the pressure put on Mr. Willis's back by Johnson's knee was the only possible way Mr. Willis could have sustained the injuries to his spine is speculative and, therefore, inadmissible. Defendants have a different theory for how Mr. Willis could have sustained the injuries: he could have suffered a heart attack while standing, fallen, and then struck his back on a hard surface. [Doc. No. 125 at pp. 10–11]. When questioned about this theory, Dr. Bux stated that Mr. Willis "died as a result of the blunt trauma to his back with a severed spinal cord and the fractures, he didn't die from a heart attack." Dr. Bux Dep. 64:17–20 [Doc. No. 167-2]. He based that opinion on the heart-related findings recorded by Dr. Edna Stroberg, the medical examiner who performed

the autopsy on Mr. Willis's body. Dr. Stroberg found no physical evidence indicating Mr. Willis suffered a heart attack.[4]

Dr. Bux's opinion is a form of "differential diagnosis," which is a term referring to the process by which a physician "'rule[s] in' all scientifically plausible causes of the plaintiff's injury. The physician then 'rules out' the least plausible causes of injury until the most likely cause remains." *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1209 (10th Cir. 2002) (quoting *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (alterations in original). "In the medical context, differential diagnosis is a common method of analysis, and federal courts have regularly found it reliable under *Daubert*." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1237 (10th Cir. 2005). For a differential diagnosis to be reliable, "[a]n expert need not consider and rule out every *conceivable* cause," *Hall v. Conoco Inc.*, 886 F.3d 1308, 1314 (10th Cir. 2018), but the expert "must provide objective reasons for eliminating" the alternatives he does consider. *Bitler*, 400 F.3d at 1237.

Here, Dr. Bux considered Defendants' alternative theory that Mr. Willis could have sustained the injuries to his spine as result of a heart attack and fall. It is Dr. Bux's opinion

---

[4] Dr. Bux testified in his deposition that there was no evidence in Dr. Stroberg's medical examiner report indicating Mr. Willis suffered a heart attack. He then listed several things medical examiners look for in autopsies that would show an individual experienced a heart attack. None of the signs of heart attack mentioned by Dr. Bux in his testimony are included in Dr. Stroberg's findings.

9

that this theory is not possible, and he gave objective reasons—Dr. Stroberg's heart-related findings—for why he arrived at that conclusion. [5] Dr. Bux's opinion is therefore reliable.

### C.   Helpfulness of Opinions

Defendants argue Dr. Bux's opinions are inadmissible because they are based on a one-sided view of the facts. Specifically, they contend Dr. Bux invades the province of the jury by merely adopting Plaintiff's version of events to bolster the credibility of Plaintiff's witnesses.

Expert testimony is admissible only when it "will help the trier of fact to understand the evidence or to determine a fact in issue," and it must be "based on sufficient facts or data." Fed. R. Evid. 702. "Generally, questions concerning . . . the factual basis and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility." *Parker v. Wal-Mart Stores, Inc.*, 267 F.R.D. 373, 377 (D. Kan. 2010).

---

[5] Defendants argue that Dr. Bux's reliance on Dr. Stroberg's findings "divests" his opinion on Mr. Willis's heart of any reliability. But the Advisory Committed explained a "physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." Fed. R. Evid. 703 Advisory Committee's Note to 1972 Proposed Rules. Further, courts have repeatedly held that experts may rely on the opinions of others.
> Although "[a]n expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert," the expert may rely upon another expert's opinion if "the facts or data relied upon [are of] the kind that 'experts in the particular field would reasonably rely on . . . in forming an opinion on the subject.'"

*Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*, 521 F. Supp. 3d 1135, 1144–45 (D. Utah 2021) (quoting *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 820 (10th Cir. 2010) and *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017)). Dr. Bux's reliance on Dr. Stroberg's analysis does not render his opinions unreliable.

Further, the Advisory Committee explicitly warned courts not to misuse Rule 702's "sufficient facts" requirement.

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Fed. R. Evid. 702 Advisory Committee's Note to 2000 amendment. Only when "an expert opinion is so fundamentally unsupported that it can offer no assistance to the jury" must such testimony be excluded. *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995).

Defendants' arguments fail to address the admissibility of Dr. Bux's opinions and, instead, address the weight Dr. Bux's opinions should be given—a role exclusively in the province of the jury. To be sure, Dr. Bux's opinion that Mr. Willis's death was caused by blunt force trauma to his spine—specifically force from Johnson's knee—is partially based on Dr. Stroberg's report and on circumstantial evidence, [6] and it could even be said to be based, in part, on Plaintiff's version of the events. But the Court is not persuaded that these are reasons to exclude Dr. Bux's testimony. Dr. Bux utilizes fact-based analysis, rather than mere assumption or conjecture, to arrive at his opinions regarding Mr. Willis's cause of death.

---

[6] Multiple statements by the detention officers and investigators could indicate Johnson's knee contacted Mr. Willis's spine. Moreover, Dr. Stroberg concluded Mr. Willis died from blunt force trauma to his back, noting that a detention officer placed his knee on Mr. Willis's back to subdue him.

11

Therefore, the Court finds his expert medical testimony would be helpful to the trier of fact. Accordingly, the Court finds that Dr. Bux's report and testimony should not be excluded.

## CONCLUSION

Defendants' Joint Motion to Exclude Expert Testimony of Robert Bux [Doc. No. 125] is **GRANTED in part** and **DENIED in part** as set forth herein.

**IT IS SO ORDERED** this 5th day of January, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge