## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STACY WILLIS, as Personal Representative of the Estate of MITCHELL EVERETT WILLIS, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-18-323-D |
| OKLAHOMA COUNTY DETENTION CENTER, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Before the Court is Defendant Johnathon Johnson's Motion for Summary Judgment [Doc. No. 130]. Plaintiff filed a response in opposition [Doc. No. 173]. Plaintiff Stacy Willis, on behalf of the estate of Mitchell Everett Willis, sued multiple defendants under 42 U.S.C. § 1983 alleging violations of Mr. Willis' rights under the United States Constitution. Plaintiff asserts an excessive force claim against Defendant Jonathan Johnson, who argues he is entitled to qualified immunity from Plaintiff's claim. The matter is fully briefed and at issue.

## FACTUAL BACKGROUND

This case arises out of Mitchell Everett Willis's tragic death at the Oklahoma County Detention Center. On the morning of August 18, 2017, officers escorted Mr. Willis into the detention center after he was arrested for public drunkenness and disorderly

conduct. Less than twelve hours later, a detention center nurse found Mr. Willis in his cell; he was unresponsive, lying face-down in a prone position.

Earlier in his detention, Mr. Willis started a physical altercation outside a receiving cell while officers attempted to provide him lunch. It took several officers to subdue him; officers placed Mr. Willis in handcuffs and ankle shackles. They then escorted Mr. Willis to be seen by detention center medical staff, who cleared him to be taken to cell 13C-03. Mr. Willis walked to the cell under his own power.

Three officers, including Jonathan Johnson and Bryan Cornelius, escorted Mr. Willis into cell 13C-03. Once inside the cell, the officers ordered Mr. Willis to lower himself to his knees; Mr. Willis complied. Johnson and Cornelius then assisted him to his stomach. At this point, Mr. Willis was face-down in a prone position restrained by handcuffs and ankle shackles.

The officers surrounded Mr. Willis to remove the handcuffs and shackles. To keep Mr. Willis on the floor, Johnson utilized a three-point stabilization technique, which involves an officer placing his foot on the floor between a detainee's neck and shoulder and lowering his shin across a detainee's shoulder blade. During the uncuffing, Cornelius thought Johnson's knee was in an incorrect position on Mr. Willis's back; he directed Johnson to reposition his knee. The officers removed the handcuffs and shackles, and they exited the cell.

Over the following six hours, officers conducted 15-minute sight-checks. The sight-check log sheet mostly documents Mr. Willis as "laying" or "sleeping," although two entries state Mr. Willis was in a sitting position. [Doc. No. 130-10]. In the early-evening,

2

the officer on sight-check duty requested that a detention center nurse check on Willis. The nurse found him unresponsive, and resuscitation measures proved unsuccessful. Shortly thereafter, Mr. Willis was pronounced dead in cell 13C-03.

An autopsy performed by Dr. Edana Stroberg, a forensic pathologist at the Office of the Chief Medical Examiner in Oklahoma City, revealed a significant injury to Mr. Willis's back. His spine was separated between the fifth and sixth thoracic vertebrae, which "is about halfway from the top and the bottom of [the] spine," and his spinal cord "was almost completely transected." Stroberg Dep. 28:12–29:4 [Doc. No. 173-23]. Dr. Stroberg concluded that Mr. Willis's cause of death was blunt force trauma to his thoracic spine.

## STANDARD OF DECISION

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Universal Underwriters Ins. Co. v. Winton*, 818 F. 3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the movant carries the burden of demonstrating an absence of a dispute as to material fact, "the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial." *Martin v. City of Oklahoma City*, 180

F. Supp. 3d 978, 983 (W.D. Okla. 2016) (citing *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Although the Court views all facts in the light most favorable to the nonmoving party at the summary judgment stage, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citations omitted).

"[I]n opposing a motion for summary judgment, the non-moving party 'cannot rest on ignorance of facts, on speculation, or on suspicion.'" *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257.

## DISCUSSION

### I.     Defendant Johnson is not entitled to qualified immunity on Plaintiff's excessive force claim.

#### A.  Qualified Immunity Standard

The purpose of qualified immunity is "to insulate public officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (quoting *Harlow*

*v. Fitzgerald*, 457 U.S. 800, 806 (1982)). Qualified immunity is intended to "protect 'government officials performing discretionary functions' and shield[ ] them from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow*, 457 U.S. at 818). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

Johnson asserts that he is entitled to qualified immunity as to Plaintiff's excessive force claim against him. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Although the evidence is viewed in the light most favorable to the nonmoving party, the "record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the [defendant is] entitled to qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Summary judgment based on qualified immunity is appropriate if the law did not put the "officer on notice that his conduct would be clearly unlawful." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).

### B.  Constitutional Violation

The Fourteenth Amendment's Due Process Clause governs claims of excessive force brought by a pretrial detainee.[1] To succeed on an excessive force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Whether a defendant's actions were objectively unreasonable "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts "must make this determination from the perspective of a reasonable officer on the scene" and "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e]

---

[1] A pretrial detainee is "one who has had a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Est. of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979)) (alterations in original). However, "the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from 'treatment of [an] arrestee detained without a warrant' and 'prior to any probable cause hearing.'" *Id.* (quoting *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991)) (emphasis in original). Although not entirely clear, it appears that Plaintiff's excessive force claim is based on conduct that occurred after Mr. Willis's arrest and transport to the jail facility, but without a warrant and prior to any probable cause hearing. If so, Mr. Willis would not have been a pretrial detainee for purposes of Plaintiff's excessive force claim. However, because the parties characterize him as a pretrial detainee and rely on the Fourteenth Amendment, and the Tenth Circuit recently treated a plaintiff in a similar situation as a pretrial detainee, the Court will apply the Fourteenth Amendment standard. *See Rowell v. Bd. of Cnty. Commissioners of Muskogee Cnty.*, 978 F.3d 1165, 1171 (10th Cir. 2020) (describing plaintiff as "a pretrial detainee" when the alleged excessive force occurred while he was being processed into the jail following his arrest for public intoxication). In any event, the Court would reach the same conclusions regardless of whether the Fourteenth or Fourth Amendment standard applies. *See McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019) (explaining that "the same objective standard now applies to excessive-force claims brought under either the Fourth or the Fourteenth Amendment").

judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (citation omitted).

Johnson argues his use of the three-point stabilization technique to remove the handcuffs and shackles from Mr. Willis was objectively reasonable. He contends that based on Mr. Willis's "uncooperative and combative" conduct, his use of force, viewed "from the perspective of a reasonable officer on the scene," did not violate Mr. Willis's constitutional right to be free from excessive force.

A review of the facts in the light most favorable to Plaintiff, however, persuades the Court that there is a question of fact as to whether Johnson acted reasonably. First, there is evidence a reasonable detention officer would have known that placing excessive pressure on Mr. Willis's spine as he lay on his stomach created a significant risk of spinal injury, which could lead to paralysis or even death. To start, there is evidence that the three-point restraint was not a necessary use of force. Plaintiff's correctional expert, Roy Timothy Gravette, opines that the three-point technique is utilized for stabilizing a detainee during cuffing, not uncuffing. Gravette Report at p.11 [Doc. No. 173-30]. Mr. Gravette's report also cites testimony from Captain Jason Ruegge, the director of training at the Oklahoma County Detention Center; Captain Ruegge testified that he did not teach officers to use the three-point stabilization technique while uncuffing a detainee. *Id.*

Moreover, Johnson was subjectively aware of the risks implicated by use of the three-point stabilization technique at the time of Mr. Willis's detention. Johnson testified that he did not like using the three-point restraint due the potential risks it poses to a detainee's spine. Johnson Dep. 92:22–93:14 [Doc. No. 173-3]. Cornelius also told OSBI

investigators that detention officers learned in training that putting pressure on the middle of a detainee's back could injure the detainee's spinal cord or neck. Cornelius Demonstration Video at 3:37–4:26 [Doc. No. 173-21].  Further, the Oklahoma County Jail Administrator at the time of Mr. Willis's detention, Major Jack Herron, testified that an improper use of the three-point restraint could cause injury to a detainee's spine. Herron Dep. 17:1–18:2 [Doc. No. 173-20]. Mr. Gravette opines that while utilizing the three-point restraint, "[p]ressure on the throat, neck or spinal cord can be dangerous and or debilitating and should be avoided." Gravette Report at p.8 [Doc. No. 173-30].

Second, there is evidence suggesting Johnson's knee contacted Mr. Willis's back with force sufficient to cause the spinal injuries sustained by Mr. Willis. After the officers lowered Mr. Willis to the cell floor and Johnson utilized the three-point technique, Cornelius directed Johnson to reposition his knee; Cornelius told Johnson "to move [his knee] away from the spinal area." Cornelius Dep. 41:4–20 [Doc. No. 173-1]. Further, Johnson testified that he was the only person who placed a knee above Mr. Willis's spine. Johnson Dep. 159:14–19 [Doc. No. 173-3].

In separate OSBI interviews, investigators asked both Cornelius and Johnson to demonstrate how Johnson's knee was positioned on Mr. Willis's back. OSBI investigators asked Paul Harmon, an investigator for the Oklahoma County Sheriff's Office, to lie on his stomach in the same way Mr. Willis was positioned in the cell. Cornelius first demonstrated the initial placement of Johnson's knee; he then repositioned his knee on Harmon to what he explained was an appropriate position. Harmon wrote a memo after Cornelius's demonstration, explaining that he could feel Cornelius's kneecap in the middle of his spine

8

and that when Cornelius moved positions it felt like Cornelius's kneecap was putting pressure between his vertebrae. Harmon Memo [Doc. No. 173-10]. Johnson, in his OSBI interview, demonstrated how he used the three-point stabilization technique on Mr. Willis. During that demonstration, Johnson explained that he could lean forward to apply weight to keep a detainee on the ground. Johnson Demonstration Video at 0:25–1:05 [Doc. No. 173-12].

Plaintiff also provides evidence suggesting Johnson's knee applied force to Mr. Willis's back sufficient to cause Mr. Willis's spinal injuries. Dr. Edana Stroberg, the medical examiner who performed the autopsy, concluded the cause of Mr. Willis's death was blunt force trauma to the thoracic spine. Report of Autopsy at p.3 [Doc. No. 173-24]. Two qualified experts offered by Plaintiff agree. Dr. Robert Bux, a pathologist, opines that, based on the injuries to Mr. Willis's spine, pressure applied by Johnson's knee was the only possible way he could have sustained those injuries. Bux Dep. 56:9–57:8 [Doc. No. 173-8]. Dr. Mariusz Ziejewski, a professor emeritus in biomechanics, opines that Johnson's knee could have caused the injuries to Mr. Willis's spine even without applying Johnson's full body weight to Mr. Willis's back. Ziejewski Report at p.16 [Doc. No. 173-9].

> With Mr. Willis in the body position created by a three-point hold, he would be unable to properly utilize his musculature to resist a shearing force on his back. Officer Johnson's (conservatively estimated) weight of 300 lbs is in excess of the 230 lb tolerance level. Placing his full weight on Mr. Willis's back would be sufficient to dislocate his spine.

> If only a portion of Officer Johnson's weight was not placed on Mr. Willis's back, the extended period of loading would be sufficient for creep to occur. This creep would result in a slow deformation and eventual transection of the affected area of the spine. Therefore, it must be concluded that the forces

present in this incident were more than sufficient to cause Mr. Willis's spinal injury.

*Id.*

In short, there is evidence Johnson used a stabilization technique that he knew was unnecessary to restrain Mr. Willis and that a reasonable detention officer would have known posed a significant risk, if applied incorrectly, of paralysis and death. If true, this constitutes an unreasonable use of force under the Fourteenth Amendment. *See Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008).

### C. Clearly Established Right

To overcome the defense of qualified immunity, Plaintiff must additionally show that Johnson's actions violated clearly established law. "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017). "The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotation and emphasis omitted). Courts must take care not to define clearly established law "at a high level of generality" and should instead determine "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations and citation omitted).

Although the Supreme Court has emphasized that specificity is important when defining clearly established law for excessive force claims, *see id.*, the Tenth Circuit has

acknowledged that "there will almost never be a previously published opinion involving exactly the same circumstances" in an excessive force case given the "all-things-considered inquiry" that must be undertaken in each case. *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

Ultimately, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), modified on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 240-43 (2009). "The key to the analysis is notice—an official somehow must be on notice that the conduct in question could violate the plaintiff's constitutional rights." *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001). A case "directly on point" is not necessary, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12, (internal quotation and citation omitted). In this regard, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (internal citation omitted).

Johnson argues his use of force on Mr. Willis, specifically the use of the three-point stabilization technique to remove the handcuffs and shackles from Mr. Willis, did not violate a clearly established right.[2] Viewing the facts most favorably to Plaintiff, Johnson utilized a three-point hold and placed his knee on Mr. Willis's back while Mr. Willis was

---

[2] Johnson makes much of Mr. Willis's "history of combative conduct." [Doc. No. 130 at p. 17]. But Cornelius testified that Mr. Willis was acting compliantly when the officers led him to his cell and lowered him to the floor to remove the handcuffs and ankle restraints. Cornelius Dep. 105:17–106:13.

face-down in a prone position and restrained by handcuffs and shackles. The Court must determine whether this conduct violated a right clearly established as of August 18, 2017.

In 2008, the Tenth Circuit declared that "it is 'clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force.'" *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008) (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004)); *see also Est. of Booker v. Gomez*, 745 F.3d 405, 428 (10th Cir. 2014) (finding that *Weigel* clearly established a pretrial detainee's right to be free from disproportionate force, including pressure on the detainee's back, when the detainee "is not resisting and . . . is restrained in handcuffs"). Moreover, in *McCoy v. Meyers*, the Tenth Circuit concluded its precedent[3] "made it clear to any reasonable officer" by 2011 "that the use of force on effectively subdued individuals violates the Fourth Amendment." 887 F.3d 1034, 1052 (10th Cir. 2018). *McCoy* shows that as of 2011, well before the events in this case, there were "three clearly established pre-existing Tenth Circuit cases making it clear to a reasonable officer . . . that applying gratuitous force to a restrained and compliant [individual]" constituted excessive force. *McCowan v. Morales*, 945 F.3d 1276, 1287 (10th Cir. 2019).

Tenth Circuit precedent places the question of whether Johnson's conduct violated Mr. Willis's clearly established rights "beyond debate." *See Ashcroft v. al-Kidd*, 563 U.S.

---

[3] The Tenth Circuit relied on at *Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1280 (10th Cir. 2007); and *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008).

731, 741 (2011). Johnson was on notice that applying pressure to Mr. Willis's back while he was face-down in a prone position and restrained by handcuffs and shackles could violate Mr. Willis's constitutional rights. Therefore, Johnson is not entitled to qualified immunity. Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff's excessive force claim.

## II.  Plaintiff provides sufficient evidence to submit the issue of punitive damages to the jury.

Johnson argues there is insufficient evidence to submit the issue of punitive damages to the jury. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "'[R]eckless or callous indifference' requires that the defendant have acted 'in the face of a perceived risk that its actions will violate federal law.'" *Eisenhour v. Cnty.*, 897 F.3d 1272, 1281 (10th Cir. 2018) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999)). On the issue of punitive damages, "[t]he focus must be on whether the defendant's actions call for 'deterrence and punishment over and above that provided by compensatory awards.'" *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (quoting *Smith*, 461 U.S. at 54).

Here, Plaintiff has offered no evidence Johnson intentionally and maliciously injured Mr. Willis. But the parties' differing versions of the events raise factual issues whether Johnson improperly utilized the three-point stabilization technique in the face of a perceived risk that placing his knee on Mr. Willis's back would injure Mr. Willis and

13

violate Mr. Willis's constitutional rights. Plaintiff has thus produced sufficient evidence to submit the issue of punitive damages against Johnson to a jury. The Court, therefore, denies Defendant's motion for summary judgment on the issue of punitive damages.

## CONCLUSION

For these reasons, the Court finds that Defendant Jonathan Johnson is not entitled to summary judgment on Plaintiff's excessive force claim or on the issue of punitive damages.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 130] is **DENIED.**

**IT IS SO ORDERED** this 1st day of February, 2022.

_____

TIMOTHY D. DeGIUSTI
Chief United States District Judge