## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STACY WILLIS, *as personal representative of the Estate of* MITCHELL EVERETT WILLIS, *deceased*, | ) ) ) ) | |
| | ) | Case No. CIV-18-323-D |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JONATHAN JOHNSON, *et al.*, | ) ) | |
| Defendants. | ) | |

### <u>ORDER</u>

Before the Court is Plaintiff's Motion to Revisit and Reconsider the Court's May 20, 2021 Order [ECF No. 141] Denying Plaintiff's Motion for Leave to File an Amended Complaint [ECF No. 82] [Doc. No. 194]. The Board of County Commissioners for Oklahoma County (the "Board") responded to Plaintiff's Motion to Reconsider [Doc. No. 196], to which Plaintiff replied [Doc. No. 199]. The matter is fully briefed and at issue.

### *Background*

This case arises out of Mitchell Everett Willis's tragic death at the Oklahoma County Detention Center. On the morning of August 18, 2017, officers escorted Mr. Willis into the detention center after he was arrested for public drunkenness and disorderly conduct. Less than twelve hours later, a detention center nurse found Mr. Willis in his cell unresponsive, lying face-down in a prone position.

Earlier in his detention, Mr. Willis started a physical altercation outside a receiving cell while officers attempted to provide him lunch. It took several officers to subdue him;

ultimately, officers placed Mr. Willis in handcuffs and ankle shackles. The officers then escorted Mr. Willis to be seen by detention center medical staff, who cleared him to be taken to cell 13C-03. Mr. Willis walked to the cell under his own power.

Three officers, including Jonathan Johnson and Bryan Cornelius, escorted Mr. Willis into cell 13C-03. Once inside the cell, the officers ordered Mr. Willis to lower himself to his knees, and Mr. Willis complied. Officers Johnson and Cornelius then assisted Mr. Willis to his stomach. At this point, Mr. Willis was face-down in a prone position restrained by handcuffs and ankle shackles.

The officers surrounded Mr. Willis to remove the handcuffs and shackles. To keep Mr. Willis on the floor, Officer Johnson utilized a three-point stabilization technique, which involves an officer placing his foot on the floor between a detainee's neck and shoulder and lowering his shin across a detainee's shoulder blade. During the uncuffing, Officer Cornelius thought Officer Johnson's knee was in an incorrect position on Mr. Willis's back, so he directed Officer Johnson to reposition his knee. The officers removed the handcuffs and shackles, and they exited the cell.

Over the following six hours, officers conducted 15-minute sight-checks. The sight-check log sheet mostly documents Mr. Willis as "laying" or "sleeping," although two entries state Mr. Willis was in a sitting position. In the early evening, the officer on sight-check duty requested that a detention center nurse check on Mr. Willis. The nurse found him unresponsive, and resuscitation measures proved unsuccessful. Shortly thereafter, Mr. Willis was pronounced dead in cell 13C-03.

2

An autopsy performed by Dr. Edana Stroberg, a forensic pathologist at the Office of the Chief Medical Examiner in Oklahoma City, revealed a significant injury to Mr. Willis's back. Dr. Stroberg concluded that Mr. Willis's cause of death was blunt force trauma to his thoracic spine.

Plaintiff Stacy Willis, as representative of Mr. Willis's estate, sued multiple defendants alleging violations of Mr. Willis's rights under the United States Constitution. Plaintiff brought claims under 42 U.S.C. § 1983, along with a request for attorney fees under 42 U.S.C. § 1988.

On September 13, 2019, the Court dismissed the Board for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). *See* 9/13/2019 Order [Doc. No. 68]. On September 11, 2020, Plaintiff filed a motion for leave to file a second amended complaint [Doc. No. 82], which sought to add the Board back into the lawsuit. Plaintiff argued that discovery conducted since the Court dismissed the Board allowed Plaintiff to cure perceived deficiencies in her claim against the Board. On May 20, 2021, the Court denied Plaintiff's motion for leave, concluding that allowing Plaintiff to amend would be futile. *See* 5/20/2021 Order [Doc. No. 141].[1]

On May 25, 2023, Plaintiff filed the instant Motion to Reconsider [Doc. No. 194], asking the Court to reconsider its prior order denying Plaintiff leave to amend her complaint. The Board has responded in opposition [Doc. No. 196] and argues that Plaintiff

---

[1] As part of its order denying Plaintiff's motion for leave, the Court also denied Plaintiff's Motion for Leave to File a Response to Defendant's Supplemental Brief in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint [Doc. No. 98].

fails to carry her burden in showing that the Court should alter or reconsider its prior order. Plaintiff has replied in further support of her Motion [Doc. No. 199].

Related to the instant Motion, the Board also filed a Motion to Intervene [Doc. No. 200], in which it argues that, should the Court deem it necessary, the Board should be allowed to intervene in the case for the sole purpose of having its response to Plaintiff's Motion to Reconsider heard. Plaintiff filed a response [Doc. No. 201], arguing that the Board's motion is untimely and the Board fails to meet its burden in showing that intervention is warranted. The Board replied in further support of its motion [Doc. No. 202].

### *Standard of Decision*

"The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.'" *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). However, "a district court always has the inherent power to reconsider its interlocutory rulings." *Warren v. Am. Bankers Ins. of Fla.*, 507 F.3d 1239, 1243 (10th Cir. 2007). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted). A motion to reconsider, however, "has dubious parameters," and "[m]any district courts vigorously disfavor these motions." *United States v. Cos*, 498 F.3d 1115, 1123 (10th Cir. 2007) (quoting Judge Wayne Alley's letter, in which he notes the "alarming practice and regularity with which motions to reconsider are filed after a decision unfavorable to a party's case").

4

*Discussion*

**I.      The Court will consider the Board's response to Plaintiff's Motion to Reconsider.**

As an initial matter, the Court addresses Plaintiff's argument raised in her reply that the Board, as a non-party, has no standing to object to her Motion to Reconsider. *See* Pl.'s Reply at 2-3.[2] Plaintiff argues that the Board should be permitted to respond to the matters raised in the Motion to Reconsider if, and only if, the Court grants Plaintiff the relief she seeks and the Board once again becomes a named party in the case. *See id.* at 3.

Because Plaintiff raised this argument in her reply, the Board did not have the chance to respond. The Board did, however, file its Motion to Intervene for the limited purpose of having its response to Plaintiff's Motion to Reconsider heard by the Court. *See* Board's Mot. to Intervene. The Board argues that it meets the standard for both intervention as of right and permissive intervention. *See id.* at 6-15. Plaintiff, on the other hand, argues that the Board fails to meet either standard. *See* Pl.'s Resp. to Mot. to Intervene.

The Court need not fully delve into the parties' arguments on intervention, as it finds that, given the unique circumstances present here, the Board properly responded to Plaintiff's Motion to Reconsider. Specifically, the Court finds persuasive the line of cases cited in the Board's Motion to Intervene, each involving a non-party responding to a party's attempt to amend their complaint and add the non-party to the case. *See* Board's Mot. to Intervene at 11-12 (citing cases).

---

[2] All citations to electronically filed pleadings in this case reference the ECF page number at the top of each page.

The Court's conclusion is also supported by commonsense considerations and judicial economy. Here, the Court dismissed the Board from the case without prejudice. After conducting more discovery in the case, Plaintiff moved for leave to amend her complaint and again add the Board as a defendant. The Court denied that motion. Now, in a request for the Court to reconsider its prior order denying leave to amend, Plaintiff argues that the Board should have no say in the matter until she secures the relief she seeks. Then, and only then, is the Board allowed to refute Plaintiff's arguments, presumably in a motion to dismiss or other motion practice. This course of action would not promote judicial economy, especially where the Board could—and, indeed, did—seek to intervene in the case for the limited purpose of having its response considered by the Court, and the Court must determine whether amendment would be futile. *See Martins v. Cnty. of Nassau*, No. 15-cv-5120(ADS)(AKT), 2017 WL 1458770, at *3 (E.D.N.Y. Apr. 24, 2017) ("In this case, even assuming that Heuschneider lacks standing to oppose the relief sought, the Court would nevertheless be inclined to consider the points and authorities raised in his submission and, to that end, would make use of the variety of rules and rationales that are available for doing so. After all, [e]ven in the absence of an opposition, . . . the Court must consider whether the proposed amendment is futile, and the only conceivable end that might be served by disregarding Heuschneider's relevant arguments at this juncture would be to prolong the inevitable filing of a substantially similar motion to dismiss after service of the amended complaint.") (internal quotation marks and citation omitted).

The Court, therefore, rejects Plaintiff's argument that the Board lacks standing to respond and will next address the merits of Plaintiff's Motion to Reconsider.

**II.    Plaintiff fails to carry her burden in showing that the Court should alter its prior order denying Plaintiff's motion for leave to amend her complaint.**

Having decided to consider the Board's response, the Court now moves to the merits of Plaintiff's Motion to Reconsider. Plaintiff argues that new evidence, which was discovered after the Court denied Plaintiff's motion to amend and add the Board as a defendant, "supports Plaintiff's allegations that the Board's actions and omissions contributed to cause the paralysis and death" of Mr. Willis. Pl.'s Mot. to Reconsider at 9. Specifically, Plaintiff focuses on three pieces of evidence:

(1) Defendant Johnson believed, based on his training, that the proper application of the three-point technique involved placing his knee diagonally over the spine of a detainee and applying pressure to the detainee's back;

(2) Defendant Johnson's trainer, Officer Austin [Slaten], trained Defendant Johnson to position his knee diagonally over the spine of a detainee and apply pressure to a detainee's back; and

(3) [T]he Oklahoma County Sheriff testified that Defendant Johnson performed the three-point technique in accordance with Defendant Johnson's training. This training, however, as demonstrated by the newly discovered evidence, was incorrect, contrary to sound correctional practices, and caused Mr. Willis's death.

*Id.* at 19. Plaintiff sets forth a lengthy set of "material facts" she claims warrants the Court's reconsideration of its prior order denying her leave to amend. *See id.* at 9-15. Plaintiff also argues that the Court should alter its prior order to correct clear error and prevent manifest injustice. *See id.* at 22-24.

In response, the Board first argues that Plaintiff's recitation of "material facts" is misleading, if not inaccurate, due to Plaintiff misstating or, at times, "intentionally" omitting other relevant deposition testimony. *See* Board's Resp. to Mot. to Reconsider at

13-21. The Board then argues that, even considering the newly submitted evidence, amendment would be futile. *See id.* at 23-30. Last, the Board argues that the Court did not commit clear error in denying Plaintiff's motion to amend, and, likewise, the order did not result in manifest injustice. *See id.* at 30-33.

A.   **Even considering Plaintiff's newly submitted evidence, amendment would be futile.**

Plaintiff relies on myriad "material facts" she claims are relevant to deciding whether the Court should alter its prior order denying Plaintiff leave to amend her complaint. *See* Pl.'s Mot. to Reconsider at 9-15. Plaintiff first argues that this new evidence was "***not*** available at the time of the September 11, 2020 filing of Plaintiff's motion to amend to rejoin the Board to this litigation and was developed ***after*** that filing." *Id.* at 19 (emphasis in original). Specifically, Plaintiff contends that the new evidence shows:

> Defendant Johnson believed, based on his training, that the proper application of the three-point technique involved placing his knee diagonally over the spine of a detainee and applying pressure to the detainee's back. The new evidence also shows that Defendant Johnson's trainer, Officer Austin [Slaten], trained Defendant Johnson to position his knee diagonally over the spine of a detainee and apply pressure to a detainee's back. Finally, the new evidence shows that even the Oklahoma County Sheriff testified that Defendant Johnson performed the three-point technique in accordance with Defendant Johnson's training. This training, however, as demonstrated by the newly discovered evidence, was incorrect, contrary to sound correctional practices, and caused Mr. Willis's death.

*Id.*

In response, the Board first argues that the Court should disregard Plaintiff's new evidence, "as most all the testimony was clearly available in advance of the decision being challenged and [Plaintiff] did not seriously attempt to bring it to the Court's attention."

Board's Resp. to Mot. to Reconsider at 23. However, even if the Court does consider the new evidence, the Board argues that amendment is futile because the evidence fails to show the "existence of a County policy on using the three-point stance technique in a manner that would cause injury." *Id.* at 24-25. Further, the Board argues, the new evidence "fails to show . . . the County acted with deliberate indifference toward Mr. Willis's rights in the conducting of its jail-officer training." *Id.* at 29.

After careful consideration of the parties' positions, and Plaintiff's newly submitted evidence, the Court finds no reason to alter its prior order denying Plaintiff leave to again add the Board as a defendant. As the Court explained in its prior order, a "plaintiff seeking to impose liability on a municipality must establish (1) the existence of a municipal policy or custom; and, (2) a direct causal connection between the policy or custom and the injury alleged." 5/20/2021 Order [Doc. No. 141] at 6.

Here, contrary to Plaintiff's assertions, the full context of relevant deposition testimony does not show the existence of a policy or custom regarding improper placement of an officer's knee across a detainee's neck or spine, or a direct causal connection between such a policy or custom and Mr. Willis's injuries. Instead, as thoroughly addressed in the Board's Response, the full picture of various witnesses' deposition testimony fails to show that the Board maintained any policy or training with deliberate indifference. The following deposition excerpts demonstrate this point:

- Officer Johnson testified that, in applying the three-point restraint, he was trained to "make sure that when you lean forward to apply the pressure to the inmate to not put it on their spine, making sure that you're at a proper stance in the three-point, so that way your weight is not thrown off and making it to where the inmate can easily push you away." Board's Resp. to Mot. to Reconsider, Ex. 1 [Doc. No. 196-1] at 3.

9

Officer Johnson further testified that he was taught to "apply pressure into the side of the inmate typically with the length of the leg on an average officer, you know, between the shoulder and down." *Id.* at 4. Crucially, Officer Johnson testified that, when being trained by Officer Slaten, he was taught to place his knee "into the side of the inmate in the backside, anywhere except for the spine." *Id.* at 6-7; 8. Officer Johnson further agreed that, "if someone that is an officer at the Oklahoma County Jail used such force on an inmate in the position of Mr. Willis that they snapped his spine in half causing his death, that wouldn't be part of the training from the jail." *Id.* at 11.

- Jack Herron, former Jail Administrator, testified that he believed that Officer Johnson was properly trained on how to use the three-point restraint, but that he did not use it properly on Mr. Willis. Board's Resp. to Mot. to Reconsider, Ex. 2 [Doc. No. 196-2] at 4. Mr. Herron further testified that the Jail hired an "outside consultant that basically reviewed all operations" from either 2009 or 2010 through 2016 or 2017, and that the consultant was never critical of the Jail's use-of-force training. *Id.* at 5-6.

- Austin Slaten, a defensive-tactics instructor for Oklahoma County, testified that officers are told "numerous times" to stay off the detainee's neck and spine while applying the three-point restraint. Board's Resp. to Mot. to Reconsider, Ex. 5 [Doc. No. 196-5] at 3; 4-5. Mr. Slaten testified that this is reinforced with officers because placing the knee on a detainee's neck or spine could break their "neck or vertebrae" and/or prevent the detainee from breathing. *Id.* at 5. Contrary to Plaintiff's assertion, Mr. Slaten testified that officers are not trained to "move their weight forward" if the officer finds himself in a bad position while applying the three-point restraint. *Id.* at 6. Mr. Slaten further testified that, before leaving his position in 2017, he never had a discussion about the three-point restraint "causing problems with inmates." *Id.* at 7.

- Officer Cornelius testified that, based on his CLEET training, officers were to "avoid[] the neck and spinal area" when applying the three-point restraint. Board's Resp. to Mot. to Reconsider, Ex. 6 [Doc. No. 196-6] at 2. Officer Cornelius further testified that he would never "apply any weight or pressure to an inmate's spine" when applying the three-point restraint because he "was taught that . . . it can cause an injury to the neck and the back." *Id.* at 3.

- Jason Ruegge, who trained Oklahoma County jail officers in the 2017 timeframe, testified that the three-point restraint is safe "[a]s long as you do it the way you're trained to do it." Board's Resp. to Mot. to Reconsider, Ex. 7 [Doc. No. 196-7] at 3-4. Mr. Ruegge further testified that "no part" of Officer Johnson's training would have "caused an injury of the spine." *Id.* at 5. Mr. Ruegge testified at length on the proper application of the three-point restraint and testified that, when officers are

trained on the proper application, no weight is put onto the spine. *Id.* at 7-9; 10-11. Last, Mr. Ruegge testified that he was not aware of Sheriff Taylor ever becoming aware "that the three-point stabilization technique resulted in somebody suffering a spinal cord injury." *Id.* at 14.

In short, and as supported by the above-cited testimony, nothing in Plaintiff's new evidence shows that the County "had a well-settled practice of failing to train its officers to avoid placing weight on a detainee's spine" or that "anyone at the County knew of past problems with the three-point stance." Board's Resp. to Mot. to Reconsider at 29-30. To the contrary, the testimony suggests that officers were properly trained on how to use the three-point restraint, but that Officer Johnson applied the restraint improperly.

> **B.    Plaintiff fails to show the need to correct clear error or prevent manifest injustice.**

Plaintiff argues that "officer Johnson will point to the County and blame it for failing to properly train the officer and use this empty chair to his advantage to avoid responsibility." Pl.'s Mot. to Reconsider at 23. This, Plaintiff claims, "is inherently unfair where the Plaintiff has consistently attempted to bring the County into this lawsuit and account for its actions that contributed to the wrongful death of an arrestee, who has been arrested without a warrant and prior to any probably [sic] cause hearing." *Id.* Plaintiff urges the Court to "remedy the clear error in its prior order and prevent manifest injustice" by allowing Plaintiff to amend her complaint and add the Board back to this lawsuit. *Id.* at 23-24.

The Board, on the other hand, argues that Plaintiff fails to establish that the Court committed clear error because Plaintiff does not show "how the Court's conclusion that no County training caused the injury, or that the County did not train its officers with deliberate

indifference to the risk of a spinal transection, was 'arbitrary, capricious, whimsical, or manifestly unreasonable.'" Def.'s Resp. to Mot. to Reconsider at 32 (quoting *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235 (10th Cir. 2001)). The Board further argues that Plaintiff fails to establish that the Court's order was manifestly unjust because Plaintiff does not show the order was a "direct, obvious, and observable error." *Id.* at 32-33 (quoting *Hadley v. Hays Med. Ctr.*, No. 14-1055-KHV, 2017 WL 748129, at *2 (D. Kan. Feb. 27, 2017)).

After careful consideration of the parties' positions, the Court finds that Plaintiff has failed to show that the Court committed clear error in denying her leave to amend her complaint, or that the Court's order resulted in manifest injustice. The burden to show clear error is a high one: Plaintiff must show that the Court's decision was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Wright ex rel. Tr. Co. of Kan.*, 259 F.3d at 1235. Plaintiff fails to show that the "Court's conclusion that no County training caused [Mr. Willis's] injury, or that the County did not train its officers with deliberate indifference to the risk of a spinal transection" was clear error. *See* Def.'s Resp. to Mot. to Reconsider at 32. Further, Plaintiff fails to show that the Court's conclusion was "direct, obvious, and observable error," amounting to manifest injustice. *See Hadley*, 2017 WL 748129, at *2.

### *Conclusion*

For these reasons, Plaintiff's Motion to Reconsider [Doc. No. 194] is **DENIED**. Further, the Board's Motion to Intervene [Doc. No. 200] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that, within 21 days of this Order, the parties shall meet-and-confer and submit a proposed case schedule setting deadlines consistent with the Scheduling Order entered November 21, 2019 [Doc. No. 72].

**IT IS SO ORDERED** this 16th day of November, 2023.

_____

TIMOTHY D. DeGIUSTI
Chief United States District Judge